IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| JONATHAN O. HAFEN, in his capacity as court-appointed Receiver,<br><br>Plaintiff,<br><br>vs.<br><br>COLETTE TAYLOR, an individual, TAYLOR MEDICAL PROFIT SHARING, and DOES 1-10,<br><br>Defendants. | ORDER AND MEMORANDUM DECISION<br><br>Case No. 2:19-cv-00896-TC<br><br>Judge Tena Campbell |

In this ancillary action to Commodity Futures Trading Commission et al v. Rust Rare Coin et al, 2:18-cv-00892-TC-DBP, ECF No. 22 (D. Utah Nov. 15, 2018), Defendant Colette Taylor moves to dismiss this case for failure to join a required party. For the reasons set forth below, the court DENIES Ms. Taylor's motion (ECF No. 18).

## FACTUAL BACKGROUND[1]

Jonathan O. Hafen (the Receiver) alleges that Rust Rare Coin, Inc. (RRC), Gaylen Dean Rust, R Legacy Racing Inc., R Legacy Entertainment LLC, and R Legacy Investments LLC (collectively, "Receivership Defendants") have been operating a classic Ponzi scheme since at least 2008. Receivership Defendants touted an exclusive investment opportunity through which individual investors both contributed money and recruited their friends and family to invest.

---

[1] Relevant facts are taken from the Receiver's complaint. The court takes them as true for the purposes of this order.

1

Receivership Defendants told investors that their money was used to buy, store, and sell physical silver—a trade which Receivership Defendants claimed consistently resulted in high investment returns. In reality, Receivership Defendants never traded silver in the manner they described to investors, and they used invested funds to pay returns to earlier investors. Through this scheme (the "Silver Pool"), Receivership Defendants have defrauded over 430 individuals and taken $200 million. (Compl. ¶¶ 21–33 (ECF No. 2).)

On November 13, 2018, the Commodity Futures Trading Commission ("CFTC") and the Utah Division of Securities filed a complaint against Receivership Defendants in this court, Civil No. 2:18-cv-00892-TC-DBP (the "CFTC Action"). The court appointed the Receiver to identify, collect, and preserve the remaining assets of the Receivership estate for the benefit of the estate's creditors, including hundreds of defrauded investors. See Commodity Futures Trading Commission et al v. Rust Rare Coin et al, 2:18-cv-00892-TC-DBP, ECF No. 22 (D. Utah Nov. 15, 2018).

This action was brought by the Receiver against Defendants to (1) recapture and return investor funds that were diverted by Receivership Defendants to Defendants as allegedly fraudulent Ponzi returns and (2) avoid the allegedly fraudulent transfer of property belonging to the Receivership Defendants.

The Receiver alleges that Defendant Colette Taylor and her now-deceased husband, LeRoy Taylor, invested $170,000 in cash and $10,000 in conversions of precious metals into the Silver Pool. (Compl. ¶ 37.) Defendant Taylor Medical Profit-Sharing Plan Trust (Taylor Medical) invested $51,450 in cash and $55,000 in conversions of precious metals into the Silver Pool. (Id. ¶ 36.)

Before LeRoy Taylor's death in 2015, he and Ms. Taylor received money represented to be distributions from the Silver Pool. The Receiver alleges that these funds "were pooled in LeRoy and Colette Taylor's joint accounts." (Id. ¶ 38.) Taylor Medical also received distributions from the Silver Pool, which the Receiver alleges were then passed through to Mr. Taylor as retirement distributions and then deposited in the Taylors' joint account.

After Mr. Taylor died, Ms. Taylor continued to receive distributions from the Silver Pool. In total, the Receiver claims that the Taylors and Taylor Medical invested about $286,450 into the Silver Pool and received at least $1,089,952 in distributions, about $800,000 more than their initial investment.

Ms. Taylor is the personal representative of LeRoy Taylor's estate (the LeRoy Taylor Estate) and the successor trustee of Taylor Medical. Although discovery is ongoing, both parties explained at oral argument that they understand the LeRoy Taylor Estate to no longer hold any assets. Rather, all of the LeRoy Taylor Estate's assets have been distributed to Ms. Taylor as beneficiary.

## LEGAL STANDARD

Defendants ask the court to dismiss the Receiver's complaint under Rules 12(c) and 19(b) of the Federal Rules of Civil Procedure for failure to join a necessary and indispensable party. Really, it is Rule 12(b)(7) and that operates in conjunction with Rule 19 to address whether a lawsuit must be dismissed if a required party is not and cannot be joined. When reviewing a Rule 12 motion to dismiss, the court "must accept all well-pleaded allegations in the complaint as true and construe them in the light most favorable to the plaintiff. Albers v. Bd. of Cty. Comm'rs of Jefferson Cty., 771 F.3d 697, 700 (10th Cir. 2014).

## ANALYSIS

Ms. Taylor maintains that the LeRoy Taylor Estate is a necessary and indispensable party under Rule 19. But, according to Ms. Taylor, the LeRoy Taylor Estate cannot be joined to this action because the statute of limitations has passed. Ms. Taylor requests that the court dismiss this case or, in the alternative, include protective provisions in its final judgment to reduce prejudice to Ms. Taylor.

There is a three-step analysis for determining whether dismissal for failure to join a party is proper under Rule 19. Citizen Potawatomi Nation v. Norton, 248 F.3d 993, 997 (10th Cir. 2001). Id. First, the court must determine if the party is a necessary party. If the absent party is not necessary, the analysis is complete. If the absent party is necessary, the court then considers the second step of whether joinder of the party is feasible. Id. If joinder is not feasible, the court must determine whether the absent party is indispensable, meaning "whether in equity and good conscience the action can continue in his absence." Id.

A party is necessary under Rule 19 if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. Pro. 19. As explained below, the LeRoy Taylor Estate meets neither definition of a necessary party.

### a. Complete Relief Among Existing Parties

A court is able to provide complete relief when a potential party's absence "does not prevent the plaintiffs from receiving their requested … relief." Sac and Fox Nation of Missouri v. Norton, 240 F.3d 1250, 1258 (10th Cir. 2001). The complete relief requirement is "is meant to preclude multiple lawsuits on the same cause of action." Alto v. Black, 738 F.3d 1111, 1115 (9th Cir. 2013) (internal quotations omitted).

Here, the Receiver seeks the recovery of funds that the Receivership Defendants diverted to Defendants as fraudulent Silver Pool returns. The court can grant this relief without joining the LeRoy Taylor Estate to this action because Utah's Uniform Voidable Transactions Act (the Utah Act)[2] allows for such a result. The Receiver's claims are brought pursuant to the Utah Act, which provides:

> (2) Except as otherwise provided in this section, to the extent a transfer is avoidable in an action by a creditor under Subsection 25-6-303(1)(a), the following rules apply:
>
> (b) the judgment may be entered against:
>
>> (i) the first transferee of the asset or the person for whose benefit the transfer was made; or
>>
>> (ii) an immediate or mediate transferee of the first transferee.

Utah Code Ann. § 25-6-304(2) (2021).

Based on this language, the Receiver argues that he only needs to establish that the initial transfers from RRC to the LeRoy Taylor Estate were avoidable; he is not required to pursue an avoidance action against the LeRoy Taylor Estate and accordingly, joinder is not necessary. The court agrees. The court can determine whether the initial transfers to the LeRoy Taylor Estate

---

[2] Before 2017, Utah's Fraudulent Transfer Act applied to actions to avoid transfers of assets. See Utah Code Ann. § 25-6-1 et seq. (2016). The earlier Fraudulent Transfer Act and the current Utah Uniform Voidable Transactions Act are identical insofar as they relate to this lawsuit.

were avoidable—based on their fraudulent nature—without the presence of the LeRoy Taylor Estate.

In contrast, Ms. Taylor relies on § 550(a) of the Bankruptcy Code to argue that the Receiver must bring a successful avoidance action against the LeRoy Taylor Estate, as the initial transferee, before he can recover from Defendants. 11 U.S.C. § 550(a) allows a bankruptcy receiver to pursue a subsequent transferee to the extent that the initial transfer is avoided.

In support of her argument, Ms. Taylor cites In re Slack-Horner Foundries Co., a bankruptcy case in which the bankruptcy receiver sought to recover property purchased by the defendant from the State of Colorado at a tax sale. 971 F.2d 577, 578–79 (10th Cir. 1992). The bankruptcy receiver pursued the defendant as an initial transferee from the bankruptcy debtor. Id. at 579. But the Tenth Circuit held that the State of Colorado was the initial transferee from the debtor, and the defendant received the property from the State, not the debtor. Id. at 580. In a footnote, the Tenth Circuit pointed out that the receiver could not avoid the subsequent transfer to the defendant "without bringing the state into the action." Id. at 580 n.1. Relying on this, Ms. Taylor asserts that the LeRoy Taylor Estate is a necessary party because Receiver cannot avoid the subsequent transfers from the LeRoy Taylor Estate to Ms. Taylor without avoiding the initial transfers from RRC to the LeRoy Taylor Estate.

A small but key difference between §550(a) of the Bankruptcy Code, as examined in Slack-Horner, and the Utah Act, which applies here, is that the Utah Act allows judgment against subsequent transferees of "avoidable" transfers, while § 550(a) allows judgment only against subsequent transferees of "avoided" transfers. 11 U.S.C. § 550(a); Utah Code Ann. § 25-6-304(2). The Utah Act's application to all "avoidable" transfers means that the Receiver must only prove that the initial transfers from RRC to the LeRoy Taylor Estate were fraudulent; he

6

need not go so far as to bring an action to actually avoid those transfers. Although the Receiver, as he concedes, must prove that the initial transfers were avoidable, the court finds that joinder of the LeRoy Taylor Estate is not necessary to do so.

Ms. Taylor's application of Slack-Horner is unpersuasive. The court declines to broadly apply the footnote in Slack-Horner, a bankruptcy case, to all initial transfers governed by the Utah Act. Even in the bankruptcy context, other courts have held that § 550(a) does not require a plaintiff to sue the initial transferee before avoiding transfers to a mediate transferee. See, e.g., In re Int'l Admin. Servs., Inc., 408 F.3d 689, 704–08 (11th Cir. 2005) ("If the initial transaction must be avoided in the first instance, then any streetwise transferee would simply re-transfer the money or asset in order to escape liability. The chain of transfers would be endless. ... We hold that Section 550(a) does not mandate a plaintiff to first pursue recovery against the initial transferee and successfully avoid all prior transfers against a mediate transferee.").

In short, complete relief can be afforded to the existing parties without the presence of the LeRoy Taylor Estate.

**b. Interest Relating to the Action**

The second consideration under Rule 19(a) is whether the LeRoy Taylor Estate claims an interested relating to the subject of this action. As noted, there are no assets left in the LeRoy Taylor Estate—everything has gone to Ms. Taylor, who is both the beneficiary and personal representative of the estate. The LeRoy Taylor Estate cannot be affected by any court order pertaining to the assets which it once held. Consequently, the LeRoy Taylor Estate has no interest in the action.

Even if the LeRoy Taylor Estate could have an interest in assets already disbursed to its beneficiary, such an interest would be adequately represented by Ms. Taylor as personal

representative. The Tenth Circuit has recognized that joinder of an absent party is not necessarily required if the absent party's interests are fully represented by the present parties. <u>Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.</u>, 94 F.3d 1407, 1412 (10th Cir. 1996). Defendants' interests in opposing the Receiver's claims are virtually identical to any hypothetical interest of the LeRoy Taylor Estate. That is, Defendants also seek to show that transfers to LeRoy and Taylor Medical—and therefore any subsequent transfers to Defendants—were not fraudulent.

Ms. Taylor maintains that she is subject to a substantial risk of incurring multiple or inconsistent obligations if this case were to proceed without the LeRoy Taylor Estate. This is based on the Receiver's position that Ms. Taylor is responsible for all payments made from RRC to Taylor Medical that were later paid to LeRoy as retirement distributions and for the payments made from RRC directly to LeRoy that he deposited in their joint account. But it is not clear to the court that these obligations are inconsistent. Eventually, all of the funds at issue were transferred to Ms. Taylor; either through Mr. Taylor's transfer of the funds into the Taylors' joint account or through the LeRoy Taylor Estate, of which Ms. Taylor is the beneficiary.

In sum, the LeRoy Taylor Estate is not a necessary party under Rule 19 because the court can provide complete relief to the existing parties and the LeRoy Taylor Estate has no interest in this case. Joinder of the LeRoy Taylor Estate is not required.

## **ORDER**

Ms. Taylor's Motion to Dismiss for Failure to Join a Required Party (ECF No. 18) is DENIED. Ms. Taylor has permission to file a separate motion at a later date requesting the inclusion of protective provisions in the court's final judgment.

DATED this 28th day of July, 2021.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge

BY THE COURT:

*[signature: Tena Campbell]*

TENA CAMPBELL
U.S. District Court Judge